IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:03-CR-00012-KDB-12

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | ORDER |
| PAUL DOUGLAS BAKER, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Paul Douglas Baker's *pro se* motion for compassionate release and reduction in sentence under 18 U.S.C. § 3582(c)(1) and the First Step Act of 2018. (Doc. No. 655). Defendant seeks compassionate release arguing that: (1) the risk of contracting COVID-19 while incarcerated at FCI Edgefield[1] is high and that, because of his medical conditions, he faces a heightened risk of a severe case of COVID-19 or possibly death if he were to contract the virus; (2) his incarceration is harsher and more punitive because of COVID-19; (3) his extensive rehabilitation efforts justify a reduction in sentence; (4) his inability to take programs deprives him a liberty; and (5) the § 3553(a) factors support release.

Having carefully reviewed the Defendant's motion, exhibits, and all other relevant portions of the record, the Court will deny his motion as Defendant has not met his burden to establish that a sentencing reduction is warranted under 18 U.S.C. § 3582(c) and the First Step Act of 2018.

---

[1] According to the Bureau of Prison's (BOP) website, FCI Edgefield currently has zero inmates and zero staff with confirmed active cases of COVID-19. There have been 3 inmate deaths and zero staff deaths, while 249 inmates have recovered, and 37 staff have recovered. Additionally, at FCI Edgefield, 222 staff have been fully inoculated and 1,659 inmates have been fully inoculated.

## I. BACKGROUND

In 2003, Defendant pled guilty to one count of conspiracy to possess with intent to distribute quantities of cocaine and cocaine base. (Doc. No. 79). On November 3, 2003, the Court sentenced Defendant to 292 months imprisonment with 10 years of supervised release. (Doc. No. 150). On December 7, 2009, the Court reduced Defendant's sentence to 240 months imprisonment pursuant to 18 U.S.C. § 3582(c)(2). (Doc. No. 422). Defendant served his full term of imprisonment and began serving his ten-year term of supervised release on February 6, 2020. (Doc. No. 626 at 1).

On August 20, 2020, the United States Probation Office filed a petition for a supervised release violation alleging the following violations: (1) new law violation; (2) new law violation; (3) new law violation; (4) drug/alcohol use; (5) leaving judicial district without permission; and (6) new law violation. *Id*. at 1-2. The Defendant was arrested for these violations on September 3, 2020. The Defendant admitted to all six violations and the Court revoked his supervised release and sentenced him to 48 months imprisonment with no supervised release to follow. (Doc. No. 636).

Defendant is currently 70 years old and serving his prison sentence at FCI Edgefield in South Carolina. According to the Bureau of Prisons website, his scheduled release date is January 24, 2024.

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Nonetheless, Congress has provided a few exceptions to this general rule. One such exception is a motion for compassionate release. Before the passage of the First Step Act, district courts were only permitted to reduce a term of imprisonment on motions for compassionate

release made by the Director of the Bureau of Prisons (BOP). Now, a court may entertain a motion filed by a defendant. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

(c) **Modification of an imposed term of imprisonment**. —The Court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

18 U.S.C. § 3582(c). Upon exhaustion of his administrative remedies, "a defendant becomes eligible for relief only if the court finds that a reduction is both (1) warranted by 'extraordinary and compelling reasons' and (2) 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. High*, __ F.3d __, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021).

However, there is currently no applicable policy statement governing compassionate release motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). "The only policy statement that could possibly be 'applicable'" is U.S.S.G. § 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under §

3582(c)(1)(A)." *McCoy*, 981 F.3d at 282 (emphasis added). Section 1B1.13 applies only to BOP-filed motions. As a result, district courts may consider any extraordinary and compelling reason for release that a defendant might raise. *Id.* Still, the Fourth Circuit has recognized that Section 1B1.13 provides helpful guidance to courts in determining what constitutes "extraordinary and compelling reasons." *High*, __ F.3d at __, 2021 WL 1823289, at *3. With respect to medical conditions, Section 1B1.13 states that extraordinary and compelling reasons include when a "defendant is suffering from a terminal illness" or is "suffering from a serious physical or medical condition." U.S.S.G. 1B1.13 cmt. 1(A)(i), (ii).

Even if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must consider the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

In *Venable v. United States*, 943 F.3d 187 (4th Cir. 2019), the Fourth Circuit considered whether the First Step Act authorized a reduction in a defendant's sentence when "he had completed his original term of imprisonment and was currently in custody following revocation of supervised release." *Id.* at 188. The Fourth Circuit's analysis in *Venable* was guided by the

"unitary sentence framework," which recognizes "custodial and supervised release terms as components of one unified sentence." *Id*. at 193-94. Applying that framework, the court concluded that "Venable's revocation sentence is a component of his underlying original sentence for the drug conviction." Id. at 194. "[G]iven that Venable's revocation sentence is part of the penalty for his initial offense," the Fourth Circuit held that Venable was "still serving his sentence for a 'covered offense' for purposes of the First Step Act." *Id*. A district court therefore has authority to consider a motion for sentence reduction even when a defendant's original sentence has been completed and the defendant is now serving time of a supervised release violation. *Id*.

### III. DISCUSSION

1. <u>COVID-19</u>

The Defendant bases part of his motion on the threat posed by the COVID-19 pandemic and states that he suffers from diabetes and high blood pressure. (Doc. No. 655 at 8). Defendant provided some of his BOP medical records which indicate that he does suffer from diabetes and hypertension but is taking appropriate medication for it. Id. at 48, 52-54. The Government reports that the Defendant is fully vaccinated against COVID-19 as he received the first dose of the Moderna vaccine on or about April 27, 2021 and the second dose of the Moderna vaccine on May 26, 2021. (Doc. No. 657 at 1). Defendant received his first COVID-19 booster vaccine, the Pfizer-BioNTech booster on December 22, 2021, and his second Pfizer-BioNTech booster on June 9, 2022. *Id*. The Centers for Disease Control and Prevention (CDC) have evaluated the COVID-19 virus and explained that vaccines "continue to be highly effective at preventing hospitalizations and death." CDC, *Benefits of Getting a* COVID-19 *Vaccine*, www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. The CDC also notes that vaccines currently available in the United States have been shown to be "highly effective" at preventing COVID-19.

The vaccine addresses Defendant's concerns about contracting COVID-19 and his purported risk of severe illness should he contract the virus. Because Defendant's vaccination significantly mitigates the risk of contracting COVID-19, Defendant cannot establish an "extraordinary and compelling" reason for compassionate release based on his concerns about contracting the virus.

2. Harsh Conditions of Confinement

The Defendant argues that his imprisonment during the COVID-19 pandemic – something not anticipated by the sentencing court – increased his prison sentence's punitive effect and constitutes extraordinary and compelling circumstances that warrant a sentence reduction. "While circumstances that 'undoubtedly increase a prison sentence's punitive effect' may constitute extraordinary and compelling circumstances in some individual cases, *United States v. Kibble*, 992 F.3d 326, 336 (4th Cir. 2021) (Gregory, J., concurring), if every defendant who experiences hardship during incarceration is entitled to a finding of extraordinary and compelling circumstances, compassionate release would become the 'exception that swallows the general rule of finality'. *United States v. Hancock*, No. 1:06-CR-206-2, 2021 U.S. Dist. LEXIS 41526, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021)." *United States v. Chavis*, No. 1:18-CR-481-3, 2021 U.S. Dist. LEXIS 124143, at *8-9 (M.D.N.C. July 2, 2021). Moreover, the "hardships" that Defendant claims to have experienced in prison during the COVID-19 pandemic are not particular to Defendant. Many inmates, as well as non-incarcerated individuals, have been infected with the COVID-19 virus and survived (or feared being infected with the virus), lost close relatives or friends due to the pandemic, and endured isolation, limits on movement, and other restrictive protocols during the pandemic. See United States v. *Murry*, F.Supp.3d__, 2021 WL 1899362, 2021 U.S. Dist. LEXIS 90792 at n.2 (E.D. Va. May 11, 2021); United States v. Burks, No.3:14-

CR-208-MOC-1, 2021 U.S. Dist LEXIS 70934, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021). Thus, Defendant's incarceration during the pandemic does not constitute "extraordinary and compelling" reasons warranting early release.

3. <u>Extensive Rehabilitation Efforts</u>

Defendant completed many educational or work assignments during his prior 20 years of incarceration which shows he made good use of his time while in prison. Unfortunately, after being released, it does not appear as if all those educational or work assignments had much effect on his rehabilitation as it only took 7 ½ months before the Defendant was back in front of the Court to be sentenced for violations of supervised release. The Court does not find this claim to be an extraordinary and compelling reason.

4. <u>Restrictive Programming due to COVID-19</u>

The Defendant asserts that he is being deprived of the liberty to reduce his sentence through educational good time credits due to the suspension of educational programs because of COVID-19. (Doc. No. 655 at 25). The Court finds this to be an interesting claim by the Defendant since he was sentenced on September 25, 2020, for violations of supervised release yet was taking education courses within the BOP by April 30, 2021, and into May of 2022. *Id.* at 61. The Court does not find this claim to be an extraordinary and compelling reason.

5. <u>The 3533(a) Factors</u>

At Defendant's sentencing, the Court considered each of the appropriate Section 3553(a) factors and determined that Defendant's breach of the Court's trust while on supervised release warranted a custodial sentence.

Bureau of Prison records indicate that Defendant has had a clean disciplinary record for the 6 months prior to September 2022, during his incarceration for violations of supervised release.

(Doc. No. 655 at 63). The records also indicate Defendant completed many educational or work assignments during his prior 20 years of incarceration which shows he made good use of his time. Although laudable, Defendant's efforts at rehabilitation do not outweigh the other applicable Section 3553(a) factors.

By age 45, Defendant had earned a criminal history category VI. (Doc. No. 626-1). Defendant served a lengthy federal prison sentence for conspiracy to possess with intent to distribute quantities of cocaine and cocaine base. The nature and circumstances of his offense were extreme and serious. At the time he committed his offense, Defendant had already been convicted of numerous drug possession charges, theft by taking, larceny, possession of stolen goods, obtaining property by false pretense, second degree trespass, and conspiracy to sell and deliver cocaine. (Doc. No. 626-1). As this Court noted when Defendant was sentenced, his criminal history supports a need to protect the public and still does. On balance, the Section 3553(a) factors weigh against a sentence reduction in Defendant's case.

6. <u>Grade A felony versus Grade B felony</u>

Defendant contends that the First Step Act reduced his crime from a Class A felony to a Class B felony and he should get a reduction in sentence. (Doc. No. 655 at 2). Defendant is incorrect. Defendant was responsible for 2.5 kilograms of cocaine base and under 21 U.S.C. § 841(b)(1)(A)(iii) and would still be exposed to a term of imprisonment of not less than 10 years nor more than life. Under 18 U.S.C. § 3581(b)(1), such a sentence classifies as a Class A felony.

In sum, the Court has considered each of the advanced grounds in combination to determine whether taken together they rise to an extraordinary and compelling reason to grant compassionate release. While the Court recognizes its authority to do so, it finds that they do not.

For these reasons, Defendant's *pro se* motion for compassionate release and reduction in sentence under 18 U.S.C. § 3582(c)(1), and the First Step Act of 2018 (Doc. No. 655), is **DENIED.**

**SO ORDERED.**

Signed: January 9, 2023

Kenneth D. Bell
United States District Judge